IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| MELISSA RAY MOLLOY | § | Civil Action No. 3:25-cv-01373-E |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DALLAS COUNTY, TEXAS | § | JURY DEMANDED |
| | § | |
| Defendant. | § | |

## SECOND AMENDED COMPLAINT

Melissa Ray Molloy files this civil action seeking redress for violations of her constitutional rights. She was unlawfully incarcerated in the Dallas County jail for twenty-one (21) days after her lawful release date.

## PRELIMINARY STATEMENT

1. "Any time a person spends even one more day in jail than required by law is unacceptable ."
   - Dallas County Judge Clay Jenkins

2. Every week, pursuant to plea agreements or following convictions at trial, hundreds of inmates in the Dallas County Jail are sentenced to probation, county jail time, or imprisonment in the Texas Department of Criminal Justice. For years, Dallas County has systematically detained inmates past their legally mandated release dates.

3. The Dallas County clerks' offices have a duty to process the orders of the trial courts, prepare judgments for signature, and send the proper paperwork to the Dallas County Sheriff's Office in a timely manner.

4. The Dallas County Sheriff's Office has a duty under state law and federal constitutional mandates to quickly and properly process judgments issued by Dallas County courts. Doing so may include releasing an inmate who has already served the requisite amount of jail time according to their sentence, releasing them from custody to probation, or processing their judgments and sending these judgements with the appropriate corresponding paperwork to the Texas Department of Criminal Justice (hereinafter "TDCJ") so that they may be transported from the Dallas County Jail to the care and custody of TDCJ or otherwise released.

5. For years, Dallas County has failed to properly perform these duties, leading hundreds of inmates to be illegally detained in the Dallas County jail for days to months.

6. Dallas County leadership has been aware of these failures for years, at every level, from lower-level employees to supervisors, administrators, and elected officials. Despite their actual knowledge of the recurrent and systemic problems surrounding timely release of inmates, Dallas County has failed to implement proper training, practices, customs, and procedures to prevent this illegal and unjust detention.

7. This case challenges Dallas County in relation to the Dallas County District Clerk's Office, the Dallas County Sheriff's Office, other parts of the Dallas County bureaucracy, and Dallas County's political and professional leadership and management, and its policies, practices, and customs which directly violate the Fourth, Eighth, and Fourteenth Amendments, as well as other federal and state laws. Pursuant to Dallas County policies, practices, and customs, Dallas County employees unlawfully incarcerated Plaintiffs beyond their lawful release date, directly violating Plaintiffs' constitutional due process rights under the Fourteenth Amendment, the Fourth Amendment right against unlawful search and seizure, the Eighth Amendment right against cruel and unusual punishment..

**Plaintiff's Second Amended Complaint**          2

8. Plaintiffs set forth below a general summary of the factual allegations. These allegations are not intended to be exhaustive, detailed, or presented in strict chronological order. Rather, they intend to provide Defendant fair and sufficient notice of the general nature and substance of Plaintiffs' claims, and to establish that such claims are facially plausible.

9. Whenever Plaintiffs plead factual allegations "upon information and belief," Plaintiffs are pleading that the specified factual contentions have or will likely have evidentiary support after a reasonable opportunity to conduct further investigation and/or discovery.

10. Plaintiffs need not assert specific constitutional claims in this pleading but rather must merely plead facts that give rise to constitutional claims, pursuant to United States Supreme Court authority. Plaintiffs ask the Court to apply the correct legal theories to the facts pled.

## PARTIES

11. Plaintiff Melissa Ray Molloy is a natural person and resides in Dallas County, Texas.

12. Defendant Dallas County, Texas ("Dallas County" or "the County") can be served with process by serving citation on County Judge Clay Jenkins at 500 Elm Street, Suite 7000, Dallas, TX 75202, or wherever she may be found.

13. Dallas County acted or failed to act, through its employees, agents, representatives, jailers, and/or chief policymakers, all of whom were acting under color of state law at all relevant times, and is liable for such actions or failures to act to the extent allowed by law (including but not necessarily limited to law applicable to claims pursuant to 42 U.S.C. § 1983). Plaintiff is not required to allege the identity of County's chief policymaker in her complaint. However, to the extent necessary, Plaintiff alleges that the County may have delegated relevant policymaking authority to one or more individuals, including but not necessarily limited to the Dallas County District Clerk and/or the Dallas County Sheriff. The County's policies,

**Plaintiff's Second Amended Complaint**          3

practices, and/or customs were the moving forces which caused the constitutional violations and resulting damages referenced in this pleading.

## JURY DEMAND

14. Plaintiff demands a trial by jury.

## JURISDICTION AND VENUE

15. This Court has original subject matter jurisdiction over this lawsuit under 28 U.S.C. §§ 1331 and 1343(a)(4), because this suit presents a federal question and seeks relief pursuant to federal statute(s) that provide for the protection of civil rights. This suit arises under 42 U.S.C. § 1983 and other federal statutes. This Court also has personal jurisdiction over the County as a Texas County.

16. Venue is proper in the Dallas Division of the Northern District of Texas, pursuant to 28 U.S.C. § 1391(b)(2), because all acts and/or omissions alleged herein occurred in this District. Dallas County is in the Dallas Division of the United States District Court for the Northern District of Texas.

## FACTUAL ALLEGATIONS

### *Melissa Ray Molloy*

17. On July 12, 2022, Plaintiff was arrested and charged with Evading Arrest or Detention in Vehicle, in Cause Number F22-47123.

18. The case was indicted in the 194th Judicial District Court in Dallas County, Texas.

19. Following her arrest, Plaintiff was held in continuous custody in the Dallas County Jail until her release on June 14, 2023.

20. On September 30, 2022, Plaintiff was found not competent, and she was held pending competency restoration.

21. On May 24, 2023, the Magistrate Court found that Plaintiff's competency had been restored.

22. On May 24, 2023, Plaintiff entered into a plea agreement with the State of Texas.

23. The Honorable Farrel Chapman, Magistrate Judge for Dallas County, accepted the plea, and found Plaintiff guilty of the lesser-included offense of Evading Arrest or Detention, a Class A misdemeanor.

24. Plaintiff was sentenced to one-hundred eighty (180) days confinement in the Dallas County jail, with jail time credit of three-hundred nineteen (319) days.

25. Pursuant to the trial court's orders, Plaintiff should have been released immediately.

26. However, the Dallas County District Clerk did not send the appropriate paperwork  to effectuate Plaintiff's release.

27. On May 26, 2023, the Dallas County District Clerk sent a Notice of Disposition ("Jail Dispo") indicating that Plaintiff's competency was restored.

28. Plaintiff was not released until June 12, 2023.

29. Dallas County illegally detained plaintiff for twenty-one (21) days.

### *A Long-Standing Pattern of Unlawful Overdetention by Dallas County*

30. The failure to properly release Plaintiff is not an isolated incident, nor was it the result of a negligent omission by just one individual, rather it is evidence of a pattern and policies, practices, and customs repeatedly implemented by Dallas County.

31. During this time period, Plaintiff notified multiple jail staff and employees of the Dallas County Sheriff's Office that he was being unlawfully detained.

32. Dallas County has exhibited a pattern of similar overdetention since at least May 2023.

33. On information and belief, multiple inmates were detained in the Dallas County jail past their court-ordered release dates in that time period.

**Plaintiff's Second Amended Complaint**          5

34. A recent survey evaluated sixty-three (63) cases in Criminal District Court No. 4, in Dallas County, Texas.

35. The cases evaluated were legally disposed while the defendant was an inmate in the Dallas County jail, between approximately October 2024 and June 2025.

36. Of the 63 cases, eleven (11) inmates were released 24 to 36 hours past their release dates. This constitutes approximately 17.5% of evaluated cases.

37. Another twelve (12) inmates in the survey were released more than 36 hours past their release dates, constituting 19.0% of evaluated cases.

38. Of the surveyed cases, twenty-three (23) presented for potential overdetention by Dallas County, or approximately 36.5% of evaluated cases.

39. Since at least May of 2023, multiple Dallas County employees and policy makers, at essentially every level of operation, have been informed of ongoing and systemic problems of overdetention in the Dallas County jail.

40. This information has been provided to Dallas County by prosecutors, defense lawyers, detained inmates, the family and friends of detained inmates, and media outlets.

41. While some of the problems related to the well-documented rollout of the new "Odyssey" courts management system in May of 2023, the basic problem of continued overdetention of inmates has persisted since that time and to the present day.

42. On July 20, 2023, the Dallas Morning News reported that "[a]ccording to the county's June [2023] jail data, inmates who have been court-ordered to be released wait an average of six days longer to be released than in April [2023]."[1]

---

[1] Peterson, Josephine, <u>Dallas County's Jail Population Swells as Technology Troubles Persist</u>, The Dallas Morning News (July 20, 2023, 5:30 AM). https://www.dallasnews.com/news/crime/2023/07/20/dallas-countys-jail-population-swells-as-technology-troubles-persist/.

**Plaintiff's Second Amended Complaint**          6

43. The same article mentions that "Criminal District Judge J.J. Koch said in an interview last week that he had someone who took a plea, but had to wait a week to be released due to the new system."[2]

44. By the end of May 2023, every relevant Dallas County policy maker, including the elected County Commissioners, the Sheriff, the elected District Clerk, the elected County Clerk, the County Administrator, the Dallas County Criminal Justice Department, and their respective staffs, was aware of ongoing problems of overdetention in the Dallas County jail.

45. Dallas County commissioners have made numerous statements indicating that issues related to the jail population (and jail overcrowding generally) are of immense importance and that many steps have been taken to analyze and address these issues.

46. Nevertheless, the problem of overdetention has continued to the present day, and the relevant policy makers have been unwilling or unable to fix this problem.

47. Rhyan Harris was illegally detained in the Dallas County jail, as an inmate from February to May of 2023. He did not file a lawsuit against Dallas County because he settled his overdetention claim with Dallas County prior to entering litigation.

48. As with Plaintiffs, Harris's illegal detention was a direct result of the systemic policies, practices, and/or customs of Dallas County. He was illegally detained for one-hundred four (104) days after his legally mandated release date, February 17, 2023, despite making multiple requests to remedy his illegal detention and release him as per the Court's orders.

49. The 204th Judicial District Court in Dallas County was assigned, and thus had jurisdiction over, Harris's case.

---

[2] *Id.*

**Plaintiff's Second Amended Complaint**               7

50. Chris McDowell was also illegally detained in the Dallas County jail, as an inmate, during the same time period as Plaintiff. He filed a lawsuit against Dallas County in the Northern District of Texas (Case 3:23-CV-02543-K). Dallas County settled that claim.[3]

51. As with Plaintiff, Mr. McDowell's illegal detention was a direct result of the systemic policies, practices, and/or customs of Dallas County. He was illegally detained for fifty-two (52) days after his legally mandated release date, June 30, 2023, despite making multiple requests (on an almost-daily basis) to jail staff to remedy his illegal detention and release him as per the Court's orders.

52. Dallas County Criminal District Court No. 1 was assigned to, and thus had jurisdiction over, Mr. McDowell's case.

53. Similarly, Glenroy Dillon was also illegally detained during the same time period due to the same systemic failures, policies, practices, and customs of Dallas County that affected Plaintiff. He filed a lawsuit against Dallas County in the Northern District of Texas (Case 3:25-CV-01071-S).[4]

54. Mr. Dillon was illegally detained for seventy-six (76) days after his legally mandated release date, May 4, 2023, despite making multiple requests to jail staff to remedy his illegal detention and release him as per the Court's orders.

55. Dallas County Criminal District Court No. 7 was assigned to, and thus had jurisdiction over, Mr, Dillon's case.

---

[3] For more information on Chris McDowell's case, *see* Martinez, Marina Trahan, <u>Dallas County Paid $160,000 To Two Men Kept in Jail Long After They Served Their Time</u>, Texas Standard (May 10, 2024, 9:30 AM), https://www.texasstandard.org/stories/dallas-county-jail-mcdowell-harris-lawsuit-settlement-texas/.

[4] For more information on Glenroy Dillon's case, *see* McManus, Tracey, <u>Dallas County Faces Another Federal Lawsuit Alleging Illegal Detention in the Jail</u>, The Dallas Morning News (May 28, 2025, 11:33 AM), https://www.dallasnews.com/news/courts/2025/05/28/dallas-county-faces-another-federal-lawsuit-alleging-illegal-detention-in-the-jail/.

**Plaintiff's Second Amended Complaint**          8

56. Charles Joe Jackson was also illegally detained during the same time period, due to systemic policies, practices, and/or customs of Dallas County. He filed a lawsuit against Dallas County in the Northern District of Texas (Case 3:25-cv-01373-E). That suit is still pending.

57. He was illegally detained for eight (8) days after his legally mandated release date, May 26, 2023.

58. Dallas County Criminal District Court No. 5 was assigned, and thus had jurisdiction over, Mr. Jackson's case.

59. Cynthis Willis was illegally detained from January 13, 2025 to February 28, 2025, due to systemic policies, practices, and/or customs of Dallas County. At this time, she has not filed a lawsuit against Dallas County in her individual capacity.

60. Willis was detained for forty-six (46) days after her legally mandated release date, January 13, 2025.

61. The 292nd Judicial District Court in Dallas County was assigned, and thus had jurisdiction over, Willis's case.

62. Dominique Jackson was illegally detained from approximately November 15, 2024, to December 9, 2024, due to systemic policies, practices, and/or customs of Dallas County. At this time, he has not filed a lawsuit against Dallas County in his individual capacity.

63. Dominique Jackson was detained for twenty-four (24) days after his legally mandated release date, November 15, 2024. Dallas County was responsible for at least twenty (20) of those days of overdetention.

64. The Criminal District Court No. 7 in Dallas County was assigned, and thus had jurisdiction over, Dominique Jackson's case.

65. Uriah Clish was illegally detained from July 2, 2025, to July 8, 2025, due to systemic policies, practices, and/or customs of Dallas County. At this time, she has not filed a lawsuit against Dallas County in his individual capacity.

66. Clish was detained for six (6) days after her legally mandated release date, July 2, 2025.

67. The 203rd Judicial District Court in Dallas County was assigned, and thus had jurisdiction over, Clish's case.

68. Each of these incidents arose out of different courts in Dallas County, and different individual Dallas County employees were the involved in the actions and inactions leading to the unlawful overdetentions.

69. Relevant Dallas County employees were under the supervision of individual elected clerks (the Dallas County Clerk and the Dallas County District Clerk, depending on the court) as well as the elected Sheriff.

70. Dallas County exhibited a pattern of reckless indifference towards the constitutional rights of detained inmates.

71. This problem was not isolated to individual employees, but was instead widespread and systemic.

72. Upon information and belief, there are multiple other people who were unlawfully detained during the same time period for the same reasons as Plaintiff.

73. Upon information and belief, the County failed to reprimand and/or take remedial action against any employees or agents as a result of action or inaction related to Plaintiff's overdetention, thus confirming that the policies, practices, and/or customs that led to the overdetention were in fact County de facto policies.

**_Violation of Plaintiff's Constitutional Rights were the Result of Official Dallas County Policies_**

74. In May of 2023, Dallas County implemented a new court management system, Odyssey. Many of the overdetention issues were either caused by or exacerbated by software issues related to the Odyssey system.

75. The Odyssey system was never integrated with the Sheriff's (and the Jail's) system. To date, these two systems do not communicate internally.

76. Dallas County District Attorney John Creuzot recently explained that when the new system (Odyssey) rolled out "it was poorly integrated into the old system. In fact, I think the old system was turned off and the new system was turned on."[5]

77. As recently as September 2025, Dallas County officials were aware that the Odyssey system was not communicating directly with the Jail's system.

78. Creuzot recently told reporters that court documents don't automatically transfer to the jail—instead, "in 2025 we are hand carrying documents from one office to another in the same building, and that's just unacceptable."[6]

79. Creuzot acknowledges that because of these policies, criminal defendants sit in jail past their release dates, sometimes for months. Asked whether a more efficient system could lead to a jail solution for jail overcrowding, Creuzot replied: "Absolutely, yeah . . . [A]nd my understanding is that we may be the least efficient county in the state."[7]

80. Many judgments and jail disposition documents that are prepared and electronically filed into Odyssey are then printed out on paper and hand-delivered to the Sheriff.

---

[5] Brown, Lori, *Dallas County DA Blames 'Inefficient' Software for Jail Overcrowding* (September 4, 2025, 4:50 PM), https://www.fox4news.com/news/dallas-county-da-blames-inefficient-software-jail-overcrowding.
[6] *Id.*
[7] *Id.*

81. Dallas County has a policy that makes transfer of documents from the courts (judgments, jail dispositions, etc.) rife with errors.

82. Dallas County has failed to implement any procedural safeguards to identify and rectify unlawful overdetention errors. Thus, Dallas County has effectively adopted a policy of overdetention, by failing to rectify foreseeable errors within a reasonable time period.

83. Specifically, Dallas County has failed to implement procedures for identifying overdetained inmates in a timely manner and quickly effecting their release.

84. Dallas County has failed to train its employees to properly respond to court documents and orders requiring the release of Dallas County inmates.

85. Dallas County has failed to train its employees to find errors and lapses in paperwork processing and to rectify those errors and lapses.

86. Dallas County has implemented processes and policies that make communication much more difficult and error-prone than necessary and failed to implement safeguards to identify and rectify such errors.

87. Dallas County has failed to implement proper policies and procedures that would cause the communication process between the courts and the Sheriff's Office to function properly, instead relying on procedures that have caused well-known problems with the timely, and constitutionally required, communication about and release of detained inmates.

### Multiple Dallas County Policy-Makers Were Responsible for Enforcing the Policy that Caused Plaintiff's Injuries

88. Dallas County Sheriff Marian Brown had actual or constructive knowledge of the Dallas County policies and was responsible for enforcing the policies that caused Plaintiff's injuries.

89. Specifically, Sheriff Brown has known that the archaic processes for transferring court documents to the Sheriff's Office are prone to human error, but has failed to implement

necessary procedures to limit and rectify such errors, and has failed to train staff to properly identify and rectify such errors.

90. She has manifestly failed to treat such errors (the overdetention of inmates whose release has been legally mandated) with the scrutiny and gravity that should be accorded to systemic violations of constitutional rights.

91. Every single commissioner serving on the Dallas County Commissioners Court at the time of Plaintiff's injuries had actual or constructive knowledge of Dallas County policies and were responsible for enforcing the policies that caused Plaintiff's injuries.

92. The elected commissioners serving the Dallas County Commissioners Court at the time of Plaintiff's injuries were: Clay Lewis Jenkins (County Judge); Dr. Theresa Daniel (Commissioner, District 1); Andrew Sommerman (Commissioner, District 2); John Wiley Price (Commissioner, District 3); and Dr. Elba Garcia (Commissioner, District 4).

93. The Dallas County Commissioners Court has failed to implement policies and procedures that would rectify the ongoing, systemic set of errors leading to overdetention, that would properly train Dallas County employees to find and ameliorate errors causing overdetention, and that would facilitate less error-prone processes for communicating court-ordered releases to the Sheriff's Office.

94. Dallas County District Clerk Felicia Pitre had actual or constructive knowledge of the Dallas County policies and was responsible for enforcing the policies that caused Plaintiff's injuries.

95. Ms. Pitre has failed to implement policies and procedures that would rectify the ongoing, systemic set of errors leading to overdetention, that would properly train Dallas County employees to find and ameliorate errors causing overdetention, and that would facilitate less error-prone processes for communicating court-ordered releases to the Sheriff's Office.

96. Dallas County Clerk John F. Warren had actual or constructive knowledge of the Dallas County policies, but was likely not responsible for enforcing the policies in Plaintiff's case (but was responsible for

97. Mr. Warren has failed to implement policies and procedures that would rectify the ongoing, systemic set of errors leading to overdetention, that would properly train Dallas County employees to find and ameliorate errors causing overdetention, and that would facilitate less error-prone processes for communicating court-ordered releases to the Sheriff's Office.

## CAUSE OF ACTION – DEFENDANT'S LIABILITY UNDER FOURTH, EIGHTH, FOURTEENTH AMENDMENT DUE PROCESS CLAIMS (42 U.S.C. § 1983)

98. Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

99. The Fourteenth Amendment guarantees that no state may "deprive any person of life, liberty, or property, without due process of law." As such, the government cannot hold an inmate without legal authority as it would deprive an inmate of her liberty without due process of law. Therefore, in accordance with the terms of their sentences, detainees are entitled to the constitutional right of timely release from prison.

100.    Overdetention also violates an inmate's Fourth Amendment right against unlawful search and seizure and Eighth Amendment right against cruel and unusual punishment.

101.    In this case, there is a pattern and practice of overdetention. The Dallas County jail system has repeatedly held citizens past their release date because Dallas County employees caused release-date errors. Additionally, the errors went uncorrected because Dallas County failed to train its employees to double-check their work for errors, failed to train its employees to supervise other employees and correct those errors, and failed to train its employees to recognize and report instances where a citizen may be being illegally detained past their release date.

102.    Supervision and fail-safes are integral components of any bureaucracy, and the failure to supervise or double-check is so obviously likely to result in uncorrected errors—in this case, overdetentions—that the failure to include them in a jail system amounts to deliberate indifference even without a past pattern of violations.

103.    However, in this case there is both a failure to train and supervise *and* a past pattern of rights violations. Multiple instances of unlawful detention from this time period have been reported. Indeed, it must be emphasized that they are the *same type* of violations that the Fifth Circuit has repeatedly decided in favor of plaintiffs in the past two years.

104.    Those cases should have put Dallas County on notice that habitual overdetention exposes the County to civil liability. Those cases, as well as (1) the obviousness with which the defendant's insufficient training and supervision are likely to cause overdetention errors and leave errors uncorrected; and (2) the past pattern of similar violations in the Dallas County jail system; all combine to illustrate that Dallas County was deliberately indifferent to the overdetentions which their errors caused.

105.    Plaintiff should have been released on May 26, 2024. However, the Dallas County District Clerk did not send the proper paperwork to the Dallas County Jail until June 2, 2023.

106.    Dallas County's illegal detention of Plaintiff is the direct and proximate cause of Plaintiff's actual damages and emotional distress, stress, anxiety, and depression.

### *Cause of Action against Dallas County under 42 U.S.C. § 1983 for Violation of Constitutional Rights*

107.    Dallas County employees and agents acted or failed to act under color of state law at all relevant times. Dallas County's policies, practices, and customs were moving forces behind and caused, were producing causes of, and/or were proximate causes of Plaintiff's damages.

108.     The Fifth Circuit Court of Appeals has made it clear that Plaintiff need not allege the identity of chief policymaker(s) at the pleading stage, but need only to plead enough factual matter to permit a reasonable inference of involvement by the relevant County policymakers. Out of an abundance of caution, the County sheriff was Dallas County's relevant chief policymaker over matters at issue in this case. Moreover, in the alternative, the County's jail administrator was the relevant chief policymaker over matters at issue in this case. Finally in the alternative, the County's commissioners' court was the relevant chief policymaker.

109.     Dallas County was deliberately indifferent in regard to its policies, practices, and customs developed or used regarding issues addressed in the allegations set forth above, for any facts that are ultimately determined to support episodic act or omission claims. Plaintiff's inclusion of the "deliberate indifference" allegation does not concede or allege that deliberate indifference is a necessary element of a conditions of confinement claim.

### *__REMEDIES__*

110.     For claims brought forth under 42 U.S.C. § 1983, damages will be determined through principles from the common law of torts. Therefore, Plaintiff seeks all remedies and damages available for causes of action asserted in this complaint pursuant to Texas and federal law, including but not necessarily limited to Texas common law applicable to the tort claim for false imprisonment, and all related and/or supporting caselaw. Plaintiff seeks remedies and damages, including, but not limited to, actual damages such as past and future compensation for humiliation, shame, fear, mental anguish, and loss of enjoyment of life. Plaintiff also seeks economic damages for lost wages and/or loss of earning capacity for losing the opportunity to work during the time of her unlawful incarceration. Plaintiff incorporates this remedies section into all sections in this complaint, asserting cause(s) of action.

111.    In this case, Plaintiff suffered injuries for her humiliation, shame, fright, mental anguish, and loss of enjoyment of life for which she seeks recovery. Plaintiff also seeks economic damages for lost wages and/or loss of earning capacity for losing the opportunity to work during the time of her unlawful incarceration.

## **ATTORNEYS' FEES**

112.    If Plaintiffs prevail in this action, by settlement or otherwise, Plaintiffs are entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court award judgment for Plaintiff within the jurisdictional limits of the Court and against Defendant, as legally available and applicable, for all damages referenced above and below in this pleading:

a)    actual damages including but not necessarily limited to past and future damages for humiliation, shame, fright, mental anguish, stress, and loss of enjoyment of life suffered by Plaintiff;

b)    actual damages including but not necessarily limited to economic damages for lost wages and/or loss of earning capacity for losing the opportunity to work during the time of her unlawful incarceration;

c)    reasonable and necessary attorneys' fees through trial and any appeals and other appellate proceedings, pursuant to 42 U.S.C. §§ 1983 and 1988;

d)    court costs and all other recoverable costs;

e)    prejudgment and postjudgment interest at the highest allowable rates; and

f)    all other relief, legal and equitable, general and special, to which Plaintiff is entitled.

**Plaintiff's Second Amended Complaint**          17

Dated: October 6, 2025                                    Respectfully submitted:

*/s/ James A. Spangler, Jr.*
James A. Spangler, Jr.
Texas Bar No. 24106454
**SPANGLER LAW PLLC**
1700 Pacific Ave, Suite 2620
Dallas, TX 75201
Telephone: 214-932-3030
jim@spanglerlaw.com


*/s/ Huma T. Yasin*
Huma T. Yasin
Texas Bar No. 24115971
**SPANGLER LAW PLLC**
1700 Pacific Ave, Suite 2620
Dallas, TX 75201
Telephone: 214-932-3030
hyasin@spanglerlaw.com

*/s/ David A. Burns*
David A. Burns
Texas Bar No. 24126298
**SPANGLER LAW PLLC**
1700 Pacific Ave, Suite 2620
Dallas, TX 75201
Telephone: 214-932-3030
dburns@spanglerlaw.com

ATTORNEYS FOR PLAINTIFF